**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **GABRIEL M. ROBLES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 11-2707-JAR-DJW |
| ) | |
| **AMARR GARAGE DOORS, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff Gabriel M. Robles, proceeding *pro se* and *in forma pauperis*, filed an employment discrimination complaint against Defendants Amarr Garage Doors ("Amarr"), United States Attorney General Eric Holder, State of Kansas, and City of Lawrence, Kansas, based on four claims: (1) Title VII of the Civil Right Act of 1964 ("Title VII"), (2) the Age Discrimination in Employment Act of 1967 ("ADEA"), (3) the Americans with Disabilities Act of 1990 ("ADA"), and (4) Defendants' conspiracy "'under color of law' to violate Plaintiff's rights." This Court dismissed all of Plaintiff's claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Doc. 60), but granted Plaintiff leave to amend the Complaint against Amarr with regard to the Title VII and ADEA claims only.[1]  This matter is before the Court on Plaintiff's Motion for Default Judgment (Doc. 63) and Amarr's Motion to Dismiss the Amended Complaint (Doc. 66).  For the reasons explained in detail below, Plaintiff's motion is denied and Amarr's motion is granted.

**I.    Amended Complaint**

---

[1]On September 13, 2012, the Tenth Circuit Court of Appeals dismissed Plaintiff's appeal from this Order for lack of jurisdiction (Doc. 76), because the claims against Amarr are still pending.  *See* Fed. R. Civ. P. 54(b).

When construing Plaintiff's Amended Complaint, the Court bears in mind that *pro se* pleadings are to be construed liberally and held to a less stringent standard than pleadings drafted by lawyers.[2] Thus, if a *pro se* plaintiff's complaint can reasonably be read "to state a valid claim on which the plaintiff could prevail, [the court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."[3] However, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant."[4] For that reason, the court should not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues,"[5] nor should it "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."[6] The court need only accept as true the plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[7]

Plaintiff, who identifies himself as a 50-year old, born-again Christian of "Mexican" ethnicity, was a temporary employee of Amarr from April 22, 2009 until June 22, 2009. Thereafter, he became a full time employee until his termination on March 21, 2011.

On April 21, 2009, Plaintiff was advised by Sedona Staffing that he would be placed as a temporary employee at Amarr beginning on April 22, 2009. When Plaintiff reported to Amarr for work on April 22, 2009, he and a Native-American individual were advised they were not

---

[2] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[3] *Id.*

[4] *Id.*

[5] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[6] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[7] *Hall*, 935 F.2d at 1110 (citation omitted).

2

needed.  Later that day, Plaintiff notified a manager at Sedona Staffing that he and the Native-American individual were the "only ones" not needed.  The manager responded the same day that Plaintiff and the other individual would be placed at Amarr on April 28, 2009.

On October 12, 2009, Plaintiff met with his department manager to discuss the alleged harassment he believed to be occurring.  Plaintiff was placed in a different department and given new work tasks.

On February 8, 2010, Plaintiff again raised concerns about harassment at work.  Following this meeting, all employees were asked to maintain a cleaning log, but certain members of the department chose to ignore this request.

Plaintiff asserts that sometime between October 30 and November 2, 2009, his manager threatened to terminate him for insubordination.  Plaintiff volunteered to take a polygraph test under the condition that other department employees do the same.  The Employee Polygraph Protection Act was then placed in the center of the workplace poster display case.

Plaintiff asserts that multiple events occurred at the workplace throughout the course of his employment, including: (1) Sedona Staffing placed an African-American worker at Amarr who coined the term "cheezburger," which is "code" for the term "nigger"; (2) on October 27, 2009, the President and CEO of Amarr skipped visiting Plaintiff's department, and Plaintiff's co-worker implied that by doing so, the President and CEO was trying to avoid Plaintiff; (3) beginning July 30, 2010 and continuing until at least Plaintiff's last day of employment, somebody began moving the floor mats to a different location causing Plaintiff to readjust the mats when he arrived to work; (4) a business unit manager did not understand Plaintiff's question on January 11, 2010, and the question had to be explained by another employee; (5)

Plaintiff was required to work after he was rear-ended on his way to work, and doors over nine feet tall that needed insulation were left for his shift to insulate; (6) a supervisor addressed Plaintiff as "Consuelo Gonzalez Hernandez"; (7) an employee threatened to shoot Plaintiff; (8) Plaintiff was sent back to work after a slip-and-fall event; (9) Plaintiff was required to see the company doctor regarding his injuries and was cleared for work by the doctor; (10) Plaintiff's department lead did not report an incident of a forklift rubbing against the backside of Plaintiff's shoe; (11) a local newspaper with a story about a state legislator's comments about illegal immigrants was placed in Plaintiff's locker; and (12) a safety video was shown to Plaintiff's department that implied that the employee faked an injury.

## II. Discussion

Plaintiff moves for default judgment on the basis that Amarr failed to timely file an answer to his Amended Complaint. Amarr moves for dismissal of Plaintiff's Amended Complaint under both Fed. R. Civ. P. 12(b)(1) and (6), for lack of subject matter jurisdiction and failure to state a claim, respectively. The Court discusses each issue in turn.

### A. Motion for Default Judgment

Plaintiff filed his Amended Complaint on July 9, 2012. Fed. R. Civ. P. 15(a)(3) allows fourteen days after service to respond to an amended pleading. In lieu of an answer, however, a defendant may file a motion to dismiss under Rule 12(b). Under Rule 12(a)(4), if a Rule 12(b) motion is filed, then the answer date is altered. In that case, a defendant's answer becomes due fourteen days after notice of the court's denial of the motion or the court's postponement of disposition of the motion until trial.[8]

---

[8] Fed. R. Civ. P. 12(a)(4)(A).

Plaintiff served Amarr Garage Doors with a summons and copy of the Amended Complaint on July 9, 2012, thereby setting July 23, 2012, as the due date for Amarr's answer.[9] On July 23, 2012, Amarr timely filed a motion to extend the time for it to answer or otherwise plead in response to the Amended Complaint up to and including August 6, 2012.[10]  On August 6, 2012, Amarr filed a Motion to Dismiss, so an answer is not due until fourteen days after the Court denies the motion or postpones its disposition until the trial of the case.[11]  Accordingly, Amarr is not in default, and Plaintiff's motion is denied.

### B.    Rule 12(b)(1)

Before a person can file a discrimination or retaliation lawsuit against an employer under Title VII or the ADEA, the person must exhaust the administrative remedies.[12]  To exhaust administrative remedies, the person must file a charge of discrimination with either the EEOC or an authorized local agency such as the KHRC and receive a right to sue letter based on that charge.[13]  The charge must identify the type of discrimination complained of, the alleged harasser, and an approximate time period to be minimally sufficient to satisfy the requirements for the content of the charge and the purposes of the notice requirement.[14]  The requirement that a Title VII claimant exhaust administrative remedies serves the purpose of 'giv[ing] the agency

---

[9]Doc. 61.

[10]Doc. 62.  *See* D. Kan. Rule 6.1(a) (requiring parties to file motions for extension of time before the specified time expires).

[11]Doc. 27.

[12]*Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005).

[13]*Rader v. U.S.D. 259 Wichita Pub. Sch.*, No. 10-4118-KHV, 2011 WL 6934267, at *3 (D. Kan. Dec. 30, 2011).

[14]*Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998) (citing 42 U.S.C. § 2000e-5).

the information it needs to investigate and resolve the dispute between the employee and the employer.'"[15]  Once these steps have been completed and the EEOC issues a right to sue notice, the person can then file a lawsuit based on the conduct described in the charge.[16]

The Court, however, lacks subject matter jurisdiction over Title VII claims that are not part of the EEOC charge because the exhaustion of administrative remedies is a jurisdictional prerequisite to the filing of a lawsuit under Title VII.[17]  "[E]ach discrete incident of [discriminatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."[18]

Plaintiff filed two charges of discrimination with the EEOC.  The first, dated November 30, 2011, states,

> From the time I became employed to the present I am required to perform assignments not required of white or black employees of the same age or younger (extra work, wrong products, no product, material handling, press operator duties).  On or about June 24, 2010, my radio privileges were suspended.  On or about August 31, 2010, upon my return to work after an auto accident, my employer required me to perform the most strenuous part of my normal job duties.  On or about October 22, 2010 and November 1, 2010 I was docked overtime hours.  Since I have been employed I have been denied computer training.  In addition I have also been passed over for promotion [sic] at least four times.  In September 2010 I was excluded from participating in the company's Team Member Forum.  I believe I have been subjected to discrimination because of my age . . . , in violation of the [ADEA]; my race, national origin, color (Mexican/brown), and my religion (born

---

[15]*Khader v. Aspin*, 1 F.3d 968, 970–71 (10th Cir. 1993) (quoting *Wade v. Sec'y of Army*, 796 F.2d 1369, 1377 (11th Cir. 1986)).

[16]*Rader*, 2011 WL 6934267, at *3.

[17]*Johnson v. Orr*, 747 F.2d 1352, 1356 (10th Cir. 1984).

[18]*Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

>   again Christian), in violation of Title VII of the Civil Rights Act of
>   1964 as amended.  I also believe that I was subjected to retaliation
>   for my complaints of discrimination in violation of the ADEA and
>   Title VII.[19]

The Second charge, dated March 28, 2011, states

>   On or about November 30, 2010, I filed a complaint of discrimination with
>   the EEOC.  On or about March 21, 2011, I was discharged.  I
>   believe that I was discharged because of my age . . ., in violation of
>   the [ADEA]; my race, national origin, color (Mexican/Brown), and
>   my religion (born again Christian), in violation of Title VII. . . .I
>   also believe that I was discharged in retaliation for my complaints
>   of discrimination in violation of the ADEA and Title VII.[20]

Amarr contends that with two exceptions, Plaintiff's claims of discrimination must be dismissed for failure to exhaust administrative remedies because they were not stated in the EEOC charges.  Amarr argues that the only two incidents of alleged discrimination stated in the Amended Complaint that were also stated in the EEOC charges are that Plaintiff was required to perform assignments not required of white or black employees and that he was required to perform his normal job duties after being involved in a car accident on his way to work, and that all other claims must be dismissed.

After reviewing the EEOC charges, the Court concludes that Amarr is correct that Plaintiff's charges of discrimination in the first EEOC charge are limited to the discrete acts described therein: different work assignments than other employees, suspension of radio privileges, required to perform normal job duties after injury, docked overtime hours, denied training, passed over for promotion, and excluded from a company forum.  Further, the Court

---

[19]Doc. 67, Ex. A.

[20]*Id.*

previously ruled that Plaintiff failed to exhaust administrative remedies with respect to any ADEA claim.[21] Amarr fails to mention, however, the second EEOC charge alleging additional charges of discrimination and retaliation stemming from Plaintiff's termination.  Thus, the Court will proceed to limit its discussion of the merits to these claims over which it has jurisdiction.

### C. Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), the court may grant a motion to dismiss if, drawing all reasonable inferences in favor of the plaintiff, a claimant fails to state a claim for which relief may be granted.[22]  To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[23]  Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[24]  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.[25]  As the Supreme Court explained, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not

---

[21]Doc. 60 at 10-11.

[22]*Dias v. City & Cnty. Of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

[23]*Bell Atl. Corp v. Twombly*, 550 U.S 544, 554 (2007).

[24]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[25]*Robbins v. Oklahoma,* 519 F.3d 1242, 1247-48 (10th Cir. 2008).  "'Plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Id.* (internal citations omitted).

do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[26] Additionally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [27]

In his original Complaint previously dismissed by the Court, Plaintiff's claims under Title VII and the ADEA contained almost no facts but merely checked the form complaint boxes under Title VII and the ADEA.[28] The only facts that were contained in the Complaint were vague and confusing. Even liberally construing his allegations, the Court found that under no logical construction of Plaintiff's Complaint had he stated a claim upon which relief can be granted under Title VII or the ADEA for discrimination or retaliation. Nevertheless, the Court granted Plaintiff the opportunity to amend his Complaint to include factual allegations instead of conclusory statements that fully describes the circumstances surrounding the alleged Title VII and ADEA violations by Amarr, in order to state a claim upon which relief can be granted.

Rather than stating a claim by providing "sufficient detail as to the discrimination and retaliation" as required by this Court's June 20, 2012 Order, however, Plaintiff 's Amended Complaint merely addresses the issues and concerns raised by the Court concerning the original Complaint's shortcomings with a disjointed stream of facts unconnected to any specific charge of discrimination. Plaintiff fails to identify any specific counts or even mention the elements of his claims, merely stating in his conclusion the "nature of case," seeking relief for

---

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

[27] *Id*.

[28] Doc. 1.


> failure to hire me/termination of my employment/failure to
> promote me/failure to accommodate my disability/terms and
> conditions of my employment differ from those of similar
> employees/ retaliation/harassment/ Plaintiff did make complaints/
> Plaintiff believe's [sic] he was discriminated against due to race
> and color which is Mexican/ Plaintiff's religion which is Born-
> Again Christian/ my disability or perceived disability which is
> neck and back injury/my age which is 50 . . .

As previously stated, Plaintiff is barred from continuing to assert a claim under the ADA by this Court's ruling that he failed to exhaust administrative remedies with respect to that claim.[29] Further, even liberally construing the pleadings to read both complaints together, the Court again finds that under no logical construction has Plaintiff stated a claim upon which relief can be granted under Title VII or the ADEA for discrimination or retaliation.

### *Title VII*

Title VII makes it unlawful for any employer to discriminate against its employees on the basis of race, color, national origin, or religion or to retaliate against a person for filing a charge of discrimination.[30] To establish a prima facie case of national origin discrimination under Title VII, a plaintiff must demonstrate that he (1) belongs to a protected class; (2) suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. To state a prima facie case of an illegal failure to promote under Title VII, a plaintiff must show that (1) there was a promotional opportunity available; (2) the plaintiff was qualified and had established availability for the position; (3) despite plaintiff's qualifications, he was not promoted to the position; and (4) the promotional opportunity

---

[29] Doc. 60 at 10-11.

[30] 42 U.S.C. § 2000e-2 to 3.

remained open or was filled.[31] And finally, Title VII forbids retaliation against an employee because he opposed any practice made unlawful by Title VII, or because he "participated . . . in an investigation, proceeding or hearing under this subchapter."[32] To prevail on a Title VII retaliation claim, a plaintiff must show that retaliation played a part in a materially adverse employment decision.[33]

Plaintiff's allegations are either irrelevant to his employment at Amarr, conclusory allegations or insufficient to raise a right to relief above the speculative level. Plaintiff provides no allegations that any of the incidents he complains of have any connection to his eventual termination, any details about his qualifications or the promotions for which he was passed over, how white or black employees are treated more favorably or any causal connection between his protected activity and the adverse employment action. Indeed, several of the incidents or events cited as showing an inference of discrimination are not even directed at Plaintiff. Accordingly, Plaintiff has failed to state a claim under Title VII.

*ADEA*

The ADEA makes it unlawful for an employer to discriminate against an employee on the basis of age or to retaliate against a person for filing a charge of age discrimination.[34] To state a prima facie claim for age discrimination, Plaintiff must allege: (1) he is a member of the class

---

[31]*Boese v. Fort Hays State Univ.*, 814 F. Supp. 2d 1138, 1145 (D.Kan.,2011) (citing *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1362 (10th Cir.1997)).

[32]42 U.S.C. § 2000e-3(a).

[33]*See Frye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224 (10th cir. 2008).

[34]29 U.S.C. § 623(a), (d).

protected by the ADEA, that is, over 40 years of age; 2) he suffered an adverse employment action; 3) he was qualified for the position at issue; and 4) he was treated less favorably than others not in the protected class.[35] The elements of a prima facie claim of retaliation under the ADEA are: (1) the employee engaged in protected opposition to discrimination; (2) the employee suffered an adverse employment action during or after his protected opposition that a reasonable employee would have found materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.[36]

As with his Title VII claims, the Amended Complaint is devoid of any allegations that Plaintiff was qualified for his position or that he was treated less favorably than younger employees. Likewise, Plaintiff does not allege any factual allegations regarding retaliation, specifically, showing any causal relationship between Plaintiff's purported protected activity and his termination. Accordingly, Plaintiff's ADEA claims also fail.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Default Judgment (Doc. 63) is DENIED;

**IT IS FURTHER ORDERED** that Defendant Amarr's Motion to Dismiss Amended Complaint (Doc. 66) is GRANTED.

**IT IS SO ORDERED.**

Dated: October 15, 2012

S/ Julie A. Robinson

---

[35]*Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010).

[36]*Daniels v. UPS, Inc.*, 797 F. Supp. 2d 1163, 1193 (D. Kan. 2011).

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE